## IN THE CIRCUIT COURT OF MARYLAND FOR MONTGOMERY COUNTY

| | |
|---|---|
| ERIK C. BELFIORE<br>3617 Martins Dairy Circle<br>Olney, Maryland 20832<br>    Plaintiff,<br><br>v.<br><br>SUMMIT FEDERAL CREDIT UNION<br>100 Marina Dr.<br>Rochester, New York 14626<br>    Defendant.<br><br>Serve On<br>State Department of Assessment and Taxation<br>301 W. Preston<br>Room 801<br>Baltimore, Maryland 21201 | Case No. 268291V<br><br>Filed: 1/13/2006<br><br>PJM06CV 431 |

## COMPLAINT

### JURISDICTION AND VENUE

1. This Court has jurisdiction over all causes of action asserted herein pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501 (2002).

2. This Court has jurisdiction over the defendant named herein pursuant to Md. Code, Cts. and Jud. Proc., § 6-307; Md. Code Ann., Corps. & Ass'ns., §§ 1-401(b), 7-104, 7-105, 7-202 and Md. Rule §§ 2-121 and 2-124. *[no allegation]*

3. Venue is proper in this Court because a substantial portion of the transaction complained of herein occurred in the County of Montgomery, the incident at issue is whether the defendant properly reported on the credit accounts of the plaintiff pursuant to the Fair Credit reporting Act.

4. The defendant is a Regional Corporation with a principle place of business in the State of Maryland. *[?]*

### PARTIES

5. The plaintiff Erik Belfiore is a resident of Montgomery County.

6. The Summit Federal Credit Union is a New York Corporation which conducts financial services to the plaintiff in the State of Maryland.

## PRELIMINARY STATEMENT

7. Plaintiff brings this action for damages based upon defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. sections 1681 et seq. ("FCRA"), and of state law obligations brought as supplemental claims.

Plaintiff is a natural person and is a resident and citizen of the Montgomery County, the State of Maryland and of the United States. Plaintiff is a "consumer" as defined by sections 1681 a(c) of the FCRA.

8. Summit Federal Credit Union, ("Summit") is a credit union doing business in the State of New York.

9. Summit is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

## FACTUAL ALLEGATIONS

10. On or about July 15, 2004, plaintiff received a letter from Debbie Manfredi of the Summit Federal Credit Union regarding the referral of his accounts to Credit Bureau Affiliates for collection.

11. This letter indicated the plaintiff's credit card account and line of credit were referred to Credit Bureau Affiliates for collection on April 24, 2004. Neither the defendant nor the Credit Burea Affiliates contact the plaintiff during the period of April 24, 2004 thru July 15, 2004.

12. Between the dates of April 24, 2004 and July 15, 2004, the plaintiff made the following payments:

| Account No. | 13257-L8 | 4232322920223740 |
|---|---|---|
| May 3, 2004 | $300.00 | $125.00 |

| | | |
|---|---|---|
| June 1, 2004 | $260.00 | $100.00 |
| July 15, 2004 | $260.00 | $100.00 |

The minimum required payment on account 13257-L8 was $260.00 per month. The minimum required payment on account 4232322920223 74 was $72.00 per month

13.     The plaintiff inquired as to this letter since he had not received any communication from Credit Bureau Affiliates regarding the collection of his account.

14.     On the same date, July 15, 2004, the defendant inaccurately and maliciously reported the defendant's account 13257-L8 as 120 days late. This credit reporting was highly unusual considering the account had previously been reported as 60 days late a month before in June of 2004.

15.     The defendant's collection policy instructs it to refer accounts to collection after it has been verified as 120 days late.

16.     On several occasions, Mr. Belfiore disputed the inaccurate credit information placed on his file. Upon review, Experian, Equifax and Transunion submitted inquiries to Summit Federal Credit Union asking it to verify the information provided to it regarding the credit record of Mr. Belfiore.

17.     On each occasion, the defendant responded to the credit agencies suggesting "no change," thus indicating the information it had provided was accurate.

18.     The defendant maintained ownership of the plaintiff's account while referring the account to its agent for collection. The account was maintained on the books of the defendant and the defendant continued to report the accounts to the credit reporting agencies.

19.     On or about July 29, 2004, the plaintiff received his first communication from Credit Bureau Affiliates. In this communication, the Credit Bureau Affiliates made no reference to the validation of the debt.

20. The plaintiff was informed by the Credit Bureau Affiliates that he was to pay a fee of twenty-five percent of the amount outstanding addition to the amount owed for the collection effort.

21. While continuing his efforts to resolve the dispute, the plaintiff, under protest, commenced making payments to the Credit Bureau Affiliates.

22. At all times relevant, the credit reporting responsibility for the plaintiff's debt was maintained by the defendant.

23. The plaintiff continued calling and writing the defendant and collection agent to refute the level of delinquency and the decision to refer the accounts to collection and received no response to his letter.

24. On or about August 13, 2004, the plaintiff filed a dispute with the credit bureau as to the accuracy of the information reported.

25. On or about September 8, 2004, the plaintiff received a result of the investigation from Equifax reflecting "no change."

26. Throughout the period of July 15, 2004 thru September 30, 2005, the plaintiff made substantial payments to his accounts, however, defendant's report of account 13527-L8 reflected no change, however, Account No. 4232322920223740 was reflected as current as September 2004.

27. On or about October 4, 2005, the credit bureaus reflected account no. 13527-L8 as current as of July 30, 2005.

28. On or about October 15, 2005, the defendant reported plaintiff's account no 13527-L8 as thirty (30) days late, thus not reflecting the payment of $2,000.00 made in September.

29. On or about November 1, 2005, the plaintiff filed a dispute with credit reporting agencies regarding the inaccurate reporting of his accounts held by the defendant.

30. On November 30, 2005, the defendant updated the accounts to be current as of May 2005.

31. On December 1, 2005, plaintiff submitted his complaint to the National Credit Bureau Association. In response to his complaint, the defendant performed another review and acknowledged an "employee error" and promised to correct all derogatory and inaccurate information.

32. On or about December 15, 2005, the defendant memorialized its intentions in a letter admitting that it was in error while alleging, "this reporting difference was because of an employee error and misapplication of payments." This information was communicated to all three credit bureaus and plaintiff credit file was updated accordingly.

33. Subsequently thereafter, plaintiff contacted Mark Gregory, Vice President, of the Summit Federal Credit Union in an attempt to resolve a potential issue.

34. During this matter the defendant threatened to turn this into a collection account, despite the fact that, as of December 15, 2005 letter, it was already reported to the three (3) credit reporting agencies as a current account.

35. On or about December 23, 2005, Mr. Belfiore was contacted by Leanne McGuinness to resolve this matter. Leanne McGuinness and Mr. Belfiore reached an agreement to clear all derogatory information from his credit report and waive the remaining balance.

36. On or about December 24, 2005, Mr. Belfiore received a copy of his credit report and found that defendant Summit Federal Credit Union was now reporting his account as a collection account since February of 2004.

37. At no time prior to this reporting was the plaintiff's account being reported as a collection account. It is further accepted and admitted by all parties involved that plaintiff's account was current.

### ADDITIONAL ALLEGATIONS

The above and foregoing actions, inactions and fault of defendant, as to each and every count, have proximately caused a wide variety of damages to plaintiffs.

Defendant's false credit reporting about plaintiffs have been a substantial factor in causing credit denials and other damages. Defendant is liable unto plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, property damage, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

## STATEMENT OF CLAIMS AGAINST DEFENDANT SUMMIT FEDERAL CREDIT UNION

38. Summit Federal Credit Union has:

a) willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA section 1681s-2(b);

b) negligently supervised its collection agency, Credit Bureau Affiliates while allowing I charge an unwarranted flat rate fee of $2,500.00.

c) violated the Fair Credit Reporting Act;

d) defamed plaintiff by publishing to third parties information regarding his creditworthiness;

e) invasion of the privacy of plaintiff;

f) misrepresentation;

g) breach of contract;

h) committed unfair and deceptive acts against plaintiff in the course if its business in violation of the Consumer Protection Act, Md. Com. Law Code Ann. § 13-101 et al.;

i) failed its duty to prevent foreseeable injury to plaintiff.

## COUNT 1-NEGLIGENCE

39. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 38 above.

40. Defendant owed duties of reasonable care to plaintiffs.

41. Defendant failed to exercise reasonable care and prudence in the accounting of the loan it had with plaintiffs, in impermissibly billed unnecessary charges to said loan, in issuing bills and false reports about the charges, and in the reporting and attempted collection of the disputed amounts and account, each subsequent reporting and re-reporting, the handling and reinvestigation of data about plaintiffs, all made the subject of this suit, and which consequently caused damaged plaintiffs.

**COUNT II NEGLIGENT SUPERVISION OF COLLECTION AGENCY**

42. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 41 above.

43. At all times relevant hereto, The Credit Bureau Affiliates was an agent of the defendant employed to collect the debt of the plaintiff.

44. The Credit Bureau Affiliates collected the payments of the plaintiff and willfully and/or negligently applied the payments to the accounts in a manner to consistently show late payments

45. The defendant knew, or should have known the payments were not being applied to the accounts of the plaintiff appropriately.

46. The defendant, as owner of the plaintiff's accounts, is responsible for all of the acts of its agent, Credit Bureau Affiliates, within the scope of its employment.

**COUNT III VIOLATIONS OF THE FAIR CREDIT REPORTING ACT THROUGH THE FAILURE TO PERFORM A REASONABLE REINVESIGATON**

47. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 46 above.

48. Defendants regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about their transactions

or experiences with consumers, and thus must comply with the provisions of Section 623(a)(2) of the FCRA, 15 U.S.C. § 1681s-2(a)(2).

49. In numerous instances, in the course and conduct of their business, defendant has furnished information relating to plaintiff to a consumer reporting agency when defendant knew or consciously avoided knowing that the information was inaccurate, and when defendants have not, clearly and conspicuously, specified to consumers an address for mailing notices disputing said information.

50. Defendant furnished to consumer reporting agency information that defendant determined was not complete or accurate, defendant have failed to promptly notify the consumer reporting agency of the determination and provide to the agency any corrections to that information, or any additional information, that was necessary to make the information provided by the defendant to the agency complete and accurate; and defendant thereafter furnished to the agency information that remained incomplete and inaccurate.

51. In numerous instances in which plaintiffs have informed defendants that they dispute information furnished by defendants to a consumer reporting agency, defendant have not reported the disputes to any or all of the consumer reporting agencies to which they furnish or have furnished the information.

52. Plaintiff filed a dispute with the consumer reporting agencies Equifax, Experian and Transunion.

53. The credit reporting agencies informed the defendant of the dispute and the defendant returned its investigation informing the parties of "No Change."

54. Defendant informed the plaintiff of its failure to perform a reasonable reinvestigation after it received a complaint by the plaintiff to the National Credit Union Association.

55. Defendant's acts have resulted in the following violations:
   * The acts and practices alleged in paragraph 64 constitute violations of Section 623(a)(1)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(1)(A).

* The acts and practices alleged in paragraph 65 constitute violations of Section 623(a)(2) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)
* The acts and practices alleged in paragraph 66 constitute violations of Section 623(a)(3) of the FCRA, 15 U.S.C. § 1681s-2(a)(3).

## COUNT IV–DEFAMATION

56. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 55 above.

57. Defendant recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning plaintiffs with reckless disregard for the truth of the matters asserted.

58. Defendant's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of plaintiffs and caused severe humiliation, emotional distress and mental anguish to plaintiffs.

59. Defendant was notified of inaccuracies and problems by plaintiffs however, the defendant continued to issue and/or publish report(s) to third parties which contained inaccurate information about plaintiffs.

60 Defendant acted with willful intent and malice to harm plaintiffs.

## COUNT V INVASION OF PRIVACY

61. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 60 above.

62. Defendant stated in its report to the credit reporting agencies that the defendant was 120 days late on his payments to the defendant.

63. Defendant knew that plaintiff was never 120 days late on his payments to his two accounts with the defendant.

64. The defendant published the facts about the plaintiff in a wreckless manner.

65. After this false information was published to the credit reporting agencies the plaintiff was denied credit, received a higher interest rate on his auto loan, was refused a lower interest rate in the refinancing of his home, suffered through humiliation and emotional distress.

66. Defendant improperly publicized facts about Plaintiff which placed plaintiff in a false light by attributing to him a delinquent payment history which were false.

67. Defendant knew that the facts were highly offensive to any reasonable person.

68. As a result of the defendant's conduct the plaintiff suffered damages.

## COUNT VI-MISREPRESENTATION

69. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 68 above.

70. Defendant made numerous misrepresentations of facts to plaintiffs regarding the collection of his accounts and caused plaintiffs to rely upon said representations.

71. Defendant knew that the representation was false, or the representation was made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to the defendant.

72. Defendant made the false representation for the purpose of defrauding the plaintiff.

73. Plaintiff's reliance thereon was reasonable under all of the circumstances.

74. Plaintiff sustained damages as a result of the misrepresentations.

## COUNT VII-BREACH OF CONTRACT

75. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 74 above.

76. Defendant has breached its agreements and contracts with plaintiffs.

77. Defendant's breaches were in bad faith. Alternatively and in the unlikely event such breaches are found not to be in bad faith, plaintiffs affirmatively plead good faith breach of contract.

## COUNT VIII-FAIR CREDIT BILLING ACT

78. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 77 above.

79. As alleged herein, defendant was notified by plaintiffs of billing errors, as required by law, and defendant failed to timely or properly respond, on multiple occasions and each such violation gives rise to a distinct action under the FCBA, 15 U.S.C. 1666, et. seq.

## COUNT IX–DECEPTIVE TRADE PRACTICES

80. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 79 above.

81. The allegations of paragraphs 1-80 above are realleged and incorporated herein by reference.

82. The violation of the Fair Credit Reporting Act constituted an unfair trade practice in violation of the Consumer Protection Act, Md. Com. Law Code Ann. § 13-101 et al., for which the defendant Summit Federal Credit Union is liable for damages incurred by the plaintiff, i.e. the attorney's fees and costs for which it has been held liable. Defendant succeeded in damaging the plaintiff through these unfair and deceptive trade practices as described herein.

**WHEREFORE**, plaintiff prays that this Court enter a Judgment in his favor and against the defendant as follows:

1. Ordering defendant to refund to the plaintiff all monies collected pursuant to its actions and policies and practices;

2. Awarding actual and treble damages pursuant to Consumer Protection Act, Md. Com. Law Code Ann. § 13-101 et al.;

3. Awarding reasonable attorney's fees and litigation expenses, plus costs of suit, pursuant to Consumer Protection Act, Md. Com. Law Code Ann. § 13-101 et al.;

4. Granting such other or further relief as is appropriate.

**WHEREFORE**, plaintiff, Erik Belfiore, pray that after all due proceedings are had there be Judgment herein in favor of Plaintiffs and against Defendant, Summit Federal Credit Union, as follows:

That there be Judgment herein in favor of Plaintiffs, Erik Belfiore, and

against Defendant, Summit Federal Credit Union, for the following damages:

1. all reasonable damages sustained by Plaintiffs, including, but not limited to;
2. statutory damages;
3. compensatory damages associated with the costs of out-of-pocket expenses;
4. embarrassment;
5. inconvenience;
6. lost economic opportunity;
7. loss of incidental time;
8. frustration;
9. emotional distress;
10. aggravation;
11. credit related damages;
12. property equity losses;
13. credit denials;

WHEREFORE the Plaintiff further requests the following damages

1. punitive damages;
2. Reasonable attorney's fees;
3. costs incurred, and court costs;
4. other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid in full.

January 6, 2006

Respectfully submitted,

William C. Johnson, Jr., Esq.
1010 Vermont Ave. NW, Ste 817
Washington, D.C. 20005
(202) 347-8833

Circuit Court for **Montgomery County**
City or County

## CIVIL–NON-DOMESTIC CASE INFORMATION REPORT

*Directions:*
  *Plaintiff: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a). A copy must be included for each defendant to be served.*
  *Defendant: You must file an Information Report as required by Rule 2-323(h).*
  **THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.**

| | | | |
|---|---|---|---|
| FORM FILED BY: | ☒ PLAINTIFF ☐ DEFENDANT | CASE NUMBER: | |
| CASE NAME: Erik C. Belfiore | | v. The Summit Federal Credit Union | |
| | Plaintiff | Defendant | |
| JURY DEMAND: | ☒ Yes ☐ No | Anticipated length of trial: ___ hours or 5 days | |
| RELATED CASE PENDING? | ☐ Yes ☐ No | If yes, Case #(s), if known: | |

Special Requirements? ☐   Interpreter/communication impairment   Which language _____
(Attach Form 1-332 if Accommodation or Interpreter Needed)   Which dialect _____
                       ☐   ADA accommodation: _____

### NATURE OF ACTION (Check one box) / DAMAGES/RELIEF

| TORTS | LABOR | A. TORTS | |
|---|---|---|---|
| ☐ Motor Tort | ☐ Workers' Comp. | **Actual Damages** | |
| ☐ Premises Liability | ☐ Wrongful Discharge | ☐ Under $7,500 | ☐ Medical Bills |
| ☐ Assault & Battery | ☐ EEO | ☐ $7,500 - $50,000 | $ _____ |
| ☐ Product Liability | ☒ Other _____ | ☐ $50,000 - $100,000 | ☐ Property Damages |
| ☐ Professional Malpractice | **CONTRACTS** | ☒ Over $100,000 | $ _____ |
| ☐ Wrongful Death | ☐ Insurance | | ☐ Wage Loss |
| ☒ Business & Commercial | ☐ Confessed Judgment | | $ _____ |
| ☒ Libel & Slander | ☐ Other | | |
| ☐ False Arrest/Imprisonment | **REAL PROPERTY** | | |
| ☐ Nuisance | ☐ Judicial Sale | **B. CONTRACTS** | **C. NONMONETARY** |
| ☐ Toxic Torts | ☐ Condemnation | | |
| ☐ Fraud | ☐ Landlord Tenant | ☐ Under $10,000 | ☐ Declaratory Judgment |
| ☒ Malicious Prosecution | ☐ Other | ☐ $10,000 - $20,000 | ☐ Injunction |
| ☐ Lead Paint | **OTHER** | ☐ Over $20,000 | ☐ Other _____ |
| ☐ Asbestos | ☐ Civil Rights | | |
| ☐ Other | ☐ Environmental | | |
| | ☐ ADA | | |
| | ☐ Other | | |

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION**
Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
  A. Mediation    ☐ Yes ☒ No       C. Settlement Conference  ☐ Yes ☒ No
  B. Arbitration  ☐ Yes ☒ No       D. Neutral Evaluation      ☐ Yes ☒ No

**TRACK REQUEST**
*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL. THIS CASE WILL THEN BE TRACKED ACCORDINGLY.*
  ☐ ½ day of trial or less       ☐ 3 days of trial time
  ☐ 1 day of trial time          ☒ More than 3 days of trial time
  ☐ 2 days of trial time

PLEASE SEE PAGE TWO OF THIS FORM FOR INSTRUCTIONS PERTAINING TO THE BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM AND ADDITIONAL INSTRUCTIONS IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY.

Date: January 10, 2006        Signature: _____

Effective January 1, 2003                Page 1 of 2

ERIK C BELFIORE                           :
        Plaintiff                         :
                                          :
v.                                        : Civil No. 268291-V
                                          :
SUMMIT FEDERAL CREDIT UNION               :
        Defendant                         :

## NOTICE OF SCHEDULING CONFERENCE AND ORDER OF COURT - TRACK 4

It is by the Circuit Court for Montgomery County, Maryland, hereby ORDERED as follows:

(1) Effective this date, this case is assigned to the individual judge designated below. **ALL FUTURE FILINGS IN THIS CASE SHALL BEAR THE CASE NUMBER AND THE JUDGE'S NAME BENEATH THE CASE NUMBER.** On filing any motion or paper related thereto with the Clerk's Office, a courtesy copy shall be delivered to the assigned judge's chambers by the party filing the pleading.

**MOTIONS FILED IN A TRACK 4 ACTION SHALL NOT EXCEED 25 PAGES INCLUDING ANY MEMORANDUM OF LAW AND OPPOSITION/REPLY MOTIONS SHALL NOT EXCEED 15 PAGES WITHOUT LEAVE OF COURT**

(2) Within sixty-five (65) days of the filing of the Complaint, Plaintiff must file proof of service on each of the Defendants of the following: copies of the Summons, the Complaint, and this Notice of Scheduling Conference and Order. As to any Defendant for whom such proof of service has not been filed, the Court will consider dismissing the Complaint without prejudice at the time of the Scheduling Conference. As to any Defendant not served at the time of the initial Scheduling Conference, the Court may sever the case against that party.

> (a) As to any Defendant served with the Summons and Complaint, within thirty days of service, the Defendant must file the Defendant's Civil Information Form with the initial pleading and a copy mailed to Plaintiff.

(3) Within the time permitted under *Maryland Rules*, each Defendant must respond to the Complaint by filing an Answer or other responsive pleading. These pleadings must be filed in accordance with Rule 2-321. If no timely response has been filed, the Court may enter an Order of Default pursuant to Rule 2-613 at the time of the initial Scheduling Conference.

SUMMIT FEDERAL CREDIT UNION
100 MARINA DR
ROCHESTER NY 14626

(Page 1 of 2)

    (4) Ten days before the initial Scheduling Conference, each party must file at Court and provide the other party and the assigned judge a Scheduling Conference Statement setting forth the following information:

        (a) for the Plaintiff, a brief statement of the nature of the controversy and the claims being made by the Plaintiffs;

        (b) for the Defendant, a concise statement of the Defendant's defenses;

        (c) an itemization of damages or other relief sought for the Plaintiff and an itemization of matters in mitigation of damages or in opposition to the relief sought by the Defendant;

        (d) the maximum offer or minimum demand now acceptable to your client;

        (e) a concise statement of the number of witnesses and a designation of the number and identity of proposed expert witnesses;

        (f) an estimation of the amount of time it will take to complete each party's portion of the trial.

    (5) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial Scheduling Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings. This Order is the only notice that parties and counsel will receive concerning this conference. Failure to appear may result in sanctions.

    (6) Upon advice that the date noted below is inconvenient for any counsel or unrepresented party, the assigned judge may continue the Conference once, with the consent of all parties, to his/her next succeeding conference date. No other continuance of the Conference will be granted except upon motion for good cause shown.

Failure to appear at the Scheduling Conference may result in a dismissal and/or default judgment.

        Case assigned to:  Judge DURKE THOMPSON

        Scheduling Conference Date: April 14, 2006

        Time:  9:00 AM  Courtroom #:    2

DATE: 01/19/2006

                              Ann S. Harrington,
                              County Administrative Judge